UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SERBENNIA CHASE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 10-261 (ESH) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM OPINION

Plaintiff Serbennia Chase brings this action for monetary damages under 42 U.S.C. § 1983, contending that defendants District of Columbia ("the District") and Corporation of America ("CCA") violated her rights under the Fourth, Fifth, and Eighth Amendments to the U.S. Constitution. The District has moved for dismissal of the complaint under Federal Rules of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment; CCA has moved to dismiss Count IV, which alleges violations of the Fifth Amendment. For the reasons set forth herein, defendants' motions to dismiss will be granted and the complaint shall be dismissed in its entirety.

## BACKGROUND

### I.   PLAINTIFFS' ALLEGATIONS

As alleged in the complaint, plaintiff was arrested on September 8, 2008, by Metropolitan Police Department ("MPD") officers and charged with assault with intent to kill while armed,

1

aggravated assault while armed, and assault with significant bodily injury.[1]  (*See* Compl. ¶¶ 3, 5.) She was brought to the Fifth District Police Precinct station and moved to a custodial interrogation room.  (*Id.*)  There, plaintiff was interrogated by two MPD detectives.  (*Id.* ¶ 6.) This interrogation was videotaped pursuant to District policy.  (*Id.*)  As set forth in MPD General Order 304.16 ("MPDGO 304.16" or "the Order") (*see* Dist.'s Mot., Ex. 2), the recording policy provides in relevant part that "*custodial interrogations* of persons suspected of committing a crime of violence" are to be "electronically record[ed], in their entirety, and to the greatest extent feasible, . . . when the interrogation takes place in Metropolitan Police Department interview rooms equipped with electronic recording equipment."  MPDGO 304.16 § II (emphasis added). Plaintiff was not told that she was being videotaped.  (Compl. ¶ 6.)

During the interrogation, one of the detectives gave plaintiff some clothing and instructed her to change into those clothes and give her own clothes to a female officer who had also entered the room.[2]  (Compl. ¶ 7.)  The detective asked if plaintiff was wearing any undergarments; she told him that she was not.  (*Id.*)  The detectives then left the room; the female officer remained and instructed plaintiff to remove her clothes and change into the provided outfit.  (*See id.* ¶ 8.)  The video camera continued to record plaintiff as she changed and was naked for approximately one minute.  (*Id.*)  Subsequently, digital copies of the interrogation room video were made and distributed to the prosecutors and to plaintiff's criminal defense counsel as part of the discovery provided in the criminal case.  (*See id.* ¶ 9.)  When plaintiff's

---

[1] According to the indictment, plaintiff was working as a stripper at the Skylark Lounge at the time and allegedly stabbed her ex-boyfriend in the neck with a knife.  (*See* Mem. of P. & A. in Supp. of Dist.'s Mot. ["Dist.'s Mem."], Ex. 1.)

[2] The District claims that plaintiff's clothes had blood on them and the detectives wanted to collect those clothes as evidence, so one of the detectives provided plaintiff with a one-piece prison suit and told her to change.  (*See* Dist.'s Mem. at 2.)  Around this time, a female "privacy officer" – who was not one of the two detectives – entered the room.  (*Id.*)

attorney informed her that she had been recorded while naked, she "was shocked, embarrassed, and felt shame[] that her attorneys and other people saw her naked body." (*Id.*)

As she awaited an August 4, 2009 trial date, plaintiff was held in the District's jail, as well as its Correctional Treatment Facility ("CTF"), which is operated by CCA pursuant to a contract with the District. (*See* Compl. ¶¶ 2, 4.) On three occasions between March and May 2009, plaintiff alleges that she was sexually assaulted by "Lieutenant Harris," a guard employed by CCA, while he was escorting her to visitor meetings. (*See id.* ¶¶ 11-17.) After plaintiff reported Harris's third alleged assault, she was transferred to a more restrictive unit within the CTF, and on July 24, she was transferred to the Rappahannock Regional Jail in Virginia. (*Id.* ¶ 18.) Upon her arrival at Rappahannock, she was placed in 24-hour "total lock down" and could only leave her cell to take showers. (*Id.*) Conditions at Rappahannock were more restrictive than at the CTF; for example, Rappahannock placed more restrictions on when inmates could receive visitors. (*Id.* ¶¶ 19-20.) Subsequently, plaintiff was transferred to Pamunkey Regional Jail in Virginia, where she was again placed in 24-hour "total lock down." (*Id.* ¶ 21.)

## II. THE INSTANT COMPLAINT

Count I of the complaint alleges that plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures was violated when she was videotaped while naked in the MPD interrogation room. (*See id.* ¶¶ 22-27.) Count II appears to allege that this videotaping also violated her common law right to be free from invasions of privacy. (*See id.* ¶¶ 28-33.) Count III alleges that her Eighth Amendment right to be free from cruel and unusual punishment was violated as a result of Lt. Harris's alleged sexual assaults. (*See id.* ¶¶ 34-38.) Count IV is less clear (*see id.* ¶¶ 39-45), but plaintiff has subsequently clarified this count by explaining that her Fifth Amendment right to due process was violated by being transferred to the

3

Rappahannock and Pamunkey jails and "being locked down, at those prisons, for no reason . . . ." (Pl.'s Opp'n at 7.) As a result of these alleged violations of her rights, plaintiff contends that defendants are jointly and severally liable to her under 42 U.S.C. § 1983 for $10,000,000 in compensatory damages and $10,000,000 in punitive damages. (*See* Compl. ¶¶ 27, 33, 38, 45.)

## ANALYSIS

I.  STANDARD OF REVIEW

"In determining whether a complaint fails to state a claim, [courts] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] . . . matters of which [courts] may take judicial notice," *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997), and documents "appended to [a motion to dismiss] and whose authenticity is not disputed" if they are "referred to in the complaint and are integral" to a plaintiff's claim. *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), courts must first assume the veracity of all "well-pleaded factual allegations" contained in the complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *see also Atherton v. Dist. of Columbia Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Next, courts must determine whether the allegations "plausibly give rise to an entitlement to relief" by presenting "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" in that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949-50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

II. COUNT II: INVASION OF PRIVACY CLAIMS

The District argues that Count II is barred by *res judicata*, because plaintiff previously raised a materially similar invasion of privacy claim in a suit filed against the District in D.C.

Superior Court (*see* Dist.'s Mot., Ex. 4 ¶¶ 8-11), and that suit was dismissed for failure to comply with the mandatory notice requirement of D.C. Code § 12-309. (*See id.*, Ex. 5.) Plaintiff does not address the District's argument about *res judicata* as to her common law claim (*see* Pl.'s Opp'n at 2), and "[i]t is therefore proper to treat defendant's argument as conceded." *Franklin v. Potter*, 600 F. Supp.2d 38, 60 (D.D.C.2009) (citing cases).[3]

## III. COUNT I: FOURTH AMENDMENT CLAIMS

Plaintiff alleges that it was unnecessary to videotape her while she disrobed in the interrogation room, and, therefore, it was unreasonable under the Fourth Amendment, because the MPD detectives "did not find it necessary to strip search her or search her body cavities" and there was no demonstrated evidentiary or institutional exigency or need to videotape her naked body. (Compl. ¶ 23.) However, regardless of whether it was unreasonable to videotape plaintiff while she was naked, the District correctly responds, *inter alia*, that plaintiff has failed to state a claim for municipal liability under 42 U.S.C. § 1983, because there is no municipal policy or regulation that caused an unreasonable search in violation of the Fourth Amendment.

Section 1983 "authorizes equitable relief and compensatory damages against any 'person' who, under color of law, deprives another of a constitutional right." *People for the Ethical Treatment of Animals v. Gittens*, 396 F.3d 416, 424-25 (D.C. Cir. 2005). The District may be considered a "person" liable under § 1983 "only if [its] agents acted pursuant to municipal policy

---

[3] Even if the argument had not been conceded, the Court would dismiss Count II for lack of subject matter jurisdiction because, as discussed *infra*, each of plaintiffs' constitutional claims will be dismissed. "Where the federal law claims that provide the Court with original jurisdiction over the action have been dismissed, the Court 'may decline to exercise supplemental jurisdiction' over the remaining state law claims." *Ning Ye v. Holder*, 667 F. Supp. 2d 103, 104 (D.D.C. 2009) (quoting 28 U.S.C. § 1367(c)(3)). The Court would so decline here. Moreover, plaintiff appears not to understand that D.C. Code § 12-309 applies to her non-constitutional claim, so her failure to give notice is fatal to Count II to the extent that it alleges a common law tort.

5

or custom." *Id.* at 425 (internal quotation marks omitted); *see Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978).  Thus, "[t]o impose liability on the District under . . . § 1983, [a plaintiff] must show 'not only a violation of his rights under the Constitution or federal law, but also that the District's custom or policy *caused* the violation.'" *Feirson v. District of Columbia*, 506 F.3d 1063, 1066 (D.C. Cir. 2007) (quoting *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004) (emphasis added).  In other words, plaintiff must show that an official policy or custom is "the 'moving force of the constitutional violation.'" *Miller v. Barry*, 698 F.2d 1259, 1261 (D.C. Cir. 1983) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).

Here, plaintiff argues that she has sufficiently alleged municipal liability because "[t]he District has admitted that its police officers caused the Plaintiff's naked body to be exposed for approximately one minute[] while enforcing a long standing policy instituted and sanctioned[] by the District of Columbia" – that is, MPDGO 304.16.  (Pl.'s Opp'n at 6.)  However, notwithstanding her bare allegation that the MPD detectives "enforce[d]" the District's regulations, practices, or customs by causing plaintiff to be videotaped while naked (Compl. ¶ 25), she fails to allege any "causal link" between MPDGO 304.16 and "the constitutional deprivation [that she] suffered . . . ." *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 64 (D.D.C. 2007).

As an initial matter, the Order only requires recordings of "custodial interrogations," MPDGO 304.16 § II, which are defined as "[w]ords or actions that the police should know are reasonably likely to elicit an incriminating response from a person who is suspected to have committed a crime of violence . . . ." *Id.* § III(1).  Once the MPD detectives left the room, they were unable to direct any "words or actions" toward plaintiff in order to elicit an incriminating

6

response and plaintiff was therefore not subjected to a "custodial interrogation" while changing. Under this interpretation of the policy, the Order did not require that plaintiff be recorded while changing, and any constitutional violation was "inflicted solely by [the District's] employees or agents" and not by its policy or practice of taping custodial interrogations. *Monell*, 436 U.S. at 694.

Alternatively, even assuming that the Order applied to the period of time during which plaintiff was disrobing, it did not require that plaintiff be videotaped while she was naked. As the District observes, the Order "is *silent* on the policy or proper procedure for the videotaping of interrogations of arrestees removing bloodied clothes, which is evidence in an ongoing criminal investigation." (Dist.'s Mem. at 13.) Moreover, the Order explains that recording equipment may be turned off if "[t]he subject states that he/she does not want the interview to be recorded." MPDGO 304.16 § IV(I)(1). Although plaintiff allegedly was not told that she was being recorded and thus could not have made such a request, she does not allege that the failure to inform her was attributable to the Order or to any "persistent failure" by the District "to train or supervise officers with respect to that policy despite knowing that it was systematically being disregarded in an unconstitutional manner." *Qutb v. Ramsey*, 285 F. Supp. 2d 33, 45 (D.D.C. 2003); *cf. City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989) (holding that inadequacy of police training could only serve as basis for § 1983 municipal liability where failure to train rose to level of "deliberate indifference to the rights of persons with whom the police come into contact").

Plaintiff has therefore failed to allege any "impermissible policy pursuant to which the [alleged violation] might have occurred," *Polk County*, 454 U.S. at 326, and given this absence of any evidence of an impermissible policy or any causal link between the Order and the claimed

7

Fourth Amendment violation, Count I must be dismissed.[4]

## IV. COUNT III: EIGHTH AMENDMENT CLAIMS

The District argues that plaintiff has failed to allege an Eighth Amendment violation because, *inter alia*, the Amendment does not apply to pretrial detainees such as plaintiff. (Dist.'s Reply at 6; *see* Compl. ¶ 10 (alleging that trial was set for August 2009, several months after last alleged assault by Harris).)[5] The District is correct. "Under well-settled law, the Amendment's prohibition applies only to persons who are subject to 'punishment' by the government, which the Supreme Court has defined to mean persons against whom the government 'has secured a formal adjudication of guilt in accordance with due process of law.'" *Powers-Bunce v. District of Columbia*, 479 F. Supp. 2d 146, 153 (D.D.C. 2007) (quoting *Bell v. Wolfish,* 441 U.S. 520, 536 n.16 (1979)); *see also Brogsdale v. Barry*, 926 F.2d 1184, 1188 (D.C. Cir. 1991) ("The foundation of the constitutional right [against overcrowding] is different for the two classes of

---

[4] At best, plaintiffs' claim resembles one for administrative negligence, either on the theory that she was not informed about the recording or because the detectives failed to turn the camera off. Plaintiff already filed a negligence claim against the District in D.C. Superior Court (*see* Dist.'s Mot., Ex. 4 ¶¶ 12-15), and that claim, as well as an invasion of privacy claim, was dismissed because a of her failure to provide timely notice under D.C. Code. § 12-309. *See supra* Section II. However, a general allegation of administrative negligence fails to state a constitutional claim cognizable under § 1983. *See Polk County*, 454 U.S. at 326 (citing *Rizzo v. Goode*, 423 U.S. 362, 370-77 (1976)). And even if the MPD detectives were negligent, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

[5] The District also argues that because Lt. Harris was a CCA employee and agent during the relevant times, only CCA is the proper defendant for Count III's claim that Harris's alleged assault of plaintiff constituted cruel and unusual punishment in violation of the Eighth Amendment. (Dist.'s Mem. at 5-6, 15.) CCA's partial motion to dismiss, however, does not address Count III at all. (*See generally* CCA's Mot.) Because plaintiff has not stated a valid Eighth Amendment claim, the Court need not determine the proper defendant. Nor need the Court determine whether either defendant could be held liable for a constitutional tort based on Harris's actions. Nonetheless, the Court notes that the only *policy* alleged is that Harris was "enforcing a long standing District policy that required inmates to be escorted when moving within the District's jail." (Pl.'s Opp'n at 6.) Obviously, such a policy is not impermissible, so any claim of municipal liability necessarily suffers from the same infirmity as does plaintiff's claim in Count I.

plaintiffs: the *pretrial detainees* must rely upon the Fifth Amendment's guarantee of due process, whereas the *convicted plaintiffs* must ground their claims upon the Eighth Amendment's ban on cruel and unusual punishment." (emphases in original)). "Thus, the Eighth Amendment does not apply to pretrial detainees like [plaintiff] who ha[d] not been adjudicated guilty of any crime [at the time of the alleged events] and [were] therefore not subject to 'punishment.'" *Powers-Bunce*, 479 F. Supp. 2d at 153. Count III shall be dismissed.

## V. COUNT IV: FIFTH AMENDMENT CLAIMS

Although Count IV lacks clarity, plaintiff has clarified her position in her Opposition, explaining that she alleges that the District violated her Fifth Amendment rights because it transferred her to the Rappahannock and Pamunkey jails "for reasons unrelated to infractions of jail policies and procedures," and because these facilities had more restrictive conditions of confinement than did the District jail and CTF. (Pl.'s Opp'n at 7.) This fails to state a valid due process claim, because it is not inherently impermissible to have transferred plaintiff for some reason other than violating a jail policy or procedure,[6] *cf. Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State."), or to impose restrictive conditions of confinement upon a person suspected of a violent crime. *Cf. Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("That life in one prison is much more disagreeable than in another does not in itself signify that a [due process] liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules."). (*See also* CCA's Mot. at 3-5.) Moreover, even if there is some basis to argue a

---

[6] As the District notes, "legitimate penological purposes relating to security and inmate safety" might well be advanced by transferring an inmate to different jail after she has complained of sexual assault by a member of the original jail's staff. (Dist.'s Reply at 9 & n.2)

deprivation of liberty, which there is not, it is not enough for plaintiff to allege "that the District transferred the plaintiff, while acting under color of state law, and under [an] agreement it has with those jails . . . ." (Pl.'s Opp'n at 7.)  Such an allegation does not suggest how any particular District policy or practice specifically required or otherwise caused a constitutional deprivation. *Cf. Miller*, 698 F.2d at 1261 (affirming dismissal where plaintiff "pointed to no rule, procedure or policy of the District which would require or even permit the alleged unconstitutional actions"); *City of Canton*, 489 U.S. at 389 (explaining that "*Monell's* rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging" that an existing program which was alleged to have been inadequate "represents a policy for which the city is responsible").  For these reasons, Count IV cannot survive.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted.  This Memorandum Opinion is accompanied by a separate order.

/s/<br>
ELLEN SEGAL HUVELLE<br>
United States District Judge

DATE:  July 13, 2010